[Cite as *State v. Hendrix*, 2019-Ohio-3301.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-180503 |
| | | TRIAL NO. B-1801750 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| RODERIC O. HENDRIX, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  August 16, 2019

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Adam Tieger*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Derek W. Gustafson*, for Defendant-Appellant.

**MYERS, Judge.**

{¶1} Roderic O. Hendrix appeals his conviction, following a bench trial, for carrying a concealed weapon in violation of R.C. 2923.12(A)(2). Hendrix contends that the trial court erred by finding him guilty of the offense because the state failed to prove, as an element of the offense under R.C. 2923.12(C)(1)(c), that he possessed the weapon for an unlawful purpose. However, because we conclude that R.C. 2923.12(C)(1)(c) creates an affirmative defense, which Hendrix failed to prove by a preponderance of the evidence, we affirm his conviction.

## *Background*

{¶2} On March 24, 2018, just after midnight, a police officer responded to a two-vehicle accident. Hendrix, the operator of one of the vehicles, told the officer that he had been driving home from a bar. He said that he had been at the bar since 5:00 p.m., and that he had had two shots of Hennessy while at the bar. The officer noticed an odor of an alcoholic beverage on Hendrix's person, and that Hendrix had bloodshot, watery eyes, and slightly slurred speech. Hendrix told a second officer that he had had two Budweisers at the bar.

{¶3} Hendrix was arrested after he failed several field-sobriety tests. He submitted to a chemical breath test, which revealed a breath-alcohol content in excess of the legal limit. He was charged with several traffic-related offenses, including operating a vehicle while under the influence of alcohol and driving with a breath-alcohol concentration over 0.17 percent.

{¶4} The police conducted an inventory search of Hendrix's car and found an unloaded Kel Tec 9 mm semi-automatic firearm in the glove compartment and a full magazine for the firearm in the center console next to the driver's seat.

Subsequent test-firing revealed that the firearm was operable. Hendrix was charged with carrying a concealed weapon in violation of R.C. 2923.12(A)(2), which provides, "No person shall knowingly carry or have, concealed on the person's person or concealed ready at hand * * * [a] handgun other than a dangerous ordnance."

{¶5} Hendrix filed a motion to dismiss the weapon charge, citing R.C. 2923.12(C)(1)(c), which provides:

(C)(1) This section [carrying a concealed weapon] does not apply to any of the following:

* * *

(c) A person's transportation or storage of a firearm, other than a firearm described in divisions (G) to (M) of section 2923.11 of the Revised Code, in a motor vehicle for any lawful purpose if the firearm is not on the actor's person.

{¶6} In his motion, Hendrix asserted that, pursuant to the exception in R.C. 2923.12(C)(1)(c), he could not be prosecuted under R.C. 2923.12 because the weapon in his car was not on his person. The state countered that R.C. 2923.12(C)(1)(c) was an affirmative defense that Hendrix was required to prove. The trial court overruled the motion to dismiss.

{¶7} Hendrix waived his right to a jury trial, and the matter proceeded to a bench trial.

{¶8} At the close of the state's case, Hendrix moved for acquittal under Crim.R. 29(A) based on insufficient evidence. He argued that the state failed to prove that he had transported the weapon with an unlawful purpose. The court overruled the motion.

{¶9}    In his defense, Hendrix testified that he had the unloaded gun in his glove compartment and a magazine for the gun in his center console "[b]ecause you're not supposed to drive around with a loaded weapon in the car."  When asked why he had the gun in his car on the day of the offense, Hendrix replied, "Because I go fishing in remote places.  I was fishing in Ross that day, and I keep it for protection from animals."

{¶10}  Hendrix testified that he had been fishing from noon "to 6:00 or so in the evening."  He acknowledged that in between the time that he had been fishing and the time of the accident, he had stopped at a bar and consumed alcohol.

{¶11}  On cross-examination, Hendrix testified that he had been fishing until "[s]omewhere around 4:00 or 5:00, maybe 6:00, something like that."  He agreed that he had gone directly to the bar after fishing, that he had been consuming alcohol the whole time he was at the bar, and that he had been in the crash on his way home from the bar.  Hendrix acknowledged that at midnight, he was no longer fishing and no longer needed protection from animals.  He also agreed that when he sat in the driver's seat of his car, the glove compartment and center console would be well within his reach.

{¶12}  At the close of the defense case, defense counsel renewed the Crim.R. 29 motion, and the trial court denied it.  The court found Hendrix guilty and sentenced him to two years' community control.

### *R.C. 2923.12(C)(1)(c) is an Affirmative Defense*

{¶13}  In his sole assignment of error, Hendrix argues that the trial court erred by finding him guilty of carrying a concealed weapon in violation of R.C. 2923.12(A)(2).  He asserts that the state failed to prove, pursuant to R.C.

4

2923.12(C)(1)(c), that he possessed the weapon for an unlawful purpose.  Hendrix contends that R.C. 2923.12(C)(1)(c) presents an additional element that that the state must prove, and that it does not present an affirmative defense.

{¶14} Due process requires the prosecution to prove beyond a reasonable doubt "all of the elements included in the definition of the offense of which the defendant is charged." *State v. Ireland*, 155 Ohio St.3d 287, 2018-Ohio-4494, 121 N.E.3d 285, ¶ 38, quoting *Patterson v. New York*, 432 U.S. 197, 210, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977).  However, "[t]he burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense, is upon the accused."  *See* R.C. 2901.05(A);[1] *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶ 35.  An affirmative defense is defined by R.C. 2901.05(D)(1) as either of the following:

(a) A defense expressly designated as affirmative; or

(b) A defense involving an excuse or justification peculiarly within the knowledge of the accused, on which the accused can fairly be required to adduce supporting evidence.

{¶15} Hendrix points out that the legislature did not specifically designate R.C. 2923.12(C)(1)(c) as an affirmative defense, even though it specifically designated R.C. 2923.12(D) as an affirmative defense.  He argues that "this difference shows the legislature understands what an affirmative defense is and how to designate an affirmative defense."

---

[1] R.C. 2901.05(A) was amended by 2018 Am.Sub.H.B. No. 228, effective March 28, 2019, which inserted "other than self-defense, defense of another, or defense of the accused's residence as described in division (B)(1) of this section."

{¶16} R.C. 2923.12(D) applies only to a violation of R.C. 2923.12(A)(1), which involves a deadly weapon other than a handgun. However, the fact that the legislature designated an affirmative defense that applied only to R.C. 2923.12(A)(1) does not negate that the exception set forth in R.C. 2923.12(C)(1)(c) is an affirmative defense to R.C. 2923.12(A)(2). Even though R.C. 2923.12(C)(1)(c) does not expressly designate the defense as affirmative, we must consider whether it sets forth a "defense involving an excuse or justification peculiarly within the knowledge of the accused, on which the accused can fairly be required to adduce supporting evidence," under R.C. 2901.05(D)(1)(b).

{¶17} Hendrix directs us to *State v. Nucklos*, 121 Ohio St.3d 332, 2009-Ohio-792, 904 N.E.2d 512, where the Supreme Court of Ohio considered whether an exception to the drug-trafficking statute, R.C. 2925.03, fell within the definition of an affirmative defense in R.C. 2901.05(D)(1)(b).

{¶18} The court considered the exception in R.C. 2925.03(B)(1), which provides that the criminal offense of trafficking in drugs under R.C. 2925.03(A) "does not apply" to a licensed health professional who complies with applicable statutory or regulatory requirements. *Nucklos* at ¶ 1. The Supreme Court held that proving a health professional's compliance with statutes or regulations does not fall within the definition of an affirmative defense in R.C. 2901.05(D)(1)(b) because it is not an excuse or justification, and proof of compliance is not peculiarly within the knowledge of the accused and could be established by proper documentation or lack thereof. *Id.* at ¶ 16, 20.

{¶19} Unlike the exception considered in *Nucklos*, however, the exception set forth in R.C. 2923.12(C)(1)(c) presents an excuse or justification uniquely within

the defendant's knowledge, that is, whether "any lawful purpose" existed for the defendant's transportation or storage of the firearm in a motor vehicle. *See State v. Johnson*, 2d Dist. Montgomery No. 25773, 2014-Ohio-2815, ¶ 32; *State v. Tarbert*, 5th Dist. Richland No. 18CA56, 2019-Ohio-1580, ¶ 27. "Compelling the [state] to refute every potential lawful purpose would be unnecessarily burdensome when the alleged 'lawful purpose' is within [the defendant's] knowledge and it would be fair and practical for him to provide supporting evidence." *Tarbert* at ¶ 27. Therefore, we hold that the exception to carrying a concealed weapon set forth in R.C. 2923.12(C)(1)(c) falls within the definition of an affirmative defense under R.C. 2901.05(D)(1)(b). *Id.* at ¶ 27-28; *Johnson* at ¶ 32.

{¶20} Hendrix's assignment of error challenges the sufficiency of the evidence supporting his conviction solely as to what he deemed to be the state's failure of proof on R.C. 2923.12(C)(1)(c) as an element of the offense of carrying a concealed weapon under R.C. 2923.12(A)(2). However, as we have determined, R.C. 2923.12(C)(1)(c) is an affirmative defense and is not an element of the offense. Hendrix does not otherwise challenge the sufficiency of the evidence supporting his conviction.

{¶21} Under R.C. 2923.12(C)(1)(c), Hendrix had the burden to prove by a preponderance of the evidence that he transported or stored the firearm in his vehicle for any lawful purpose. The trial court, as the trier of fact, was in the best position to judge the credibility of Hendrix's testimony. Even if the trial court accepted as true Hendrix's purportedly lawful purpose of protection from wildlife while fishing, the court was free to conclude that the stated purpose no longer existed six hours removed from the event when Hendrix operated the vehicle under the

influence of alcohol. We cannot say that the trial court, acting as the trier of fact, clearly lost its way and created such a manifest miscarriage of justice that Hendrix's conviction must be reversed and a new trial ordered. *See State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

## *Conclusion*

{¶22} Consequently, we hold that R.C. 2923.12(C)(1)(c) creates an affirmative defense, and that the trial court did not err in concluding that Hendrix failed to prove that he had transported or stored the firearm in his vehicle for a lawful purpose. We overrule the sole assignment of error and affirm the trial court's judgment.

Judgment affirmed.

**MOCK, P.J.,** and **BERGERON, J.,** concur.

Please note:

The court has recorded its own entry this date.